UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80725-HURLEY/HOPKINS

PATRICK MARCELIN,

    Plaintiff,

vs.

CITY OF WEST PALM BEACH,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon defendant City of West Palm Beach's motion for summary judgment [DE # 24]. For the reasons expressed below, the court will grant the motion and enter judgment in favor of defendant.

### BACKGROUND

This is a 42 U.S.C. § 1983 action alleging denial of substantive due process and procedural due process. In resolving defendant's motion, the court has viewed the record evidence in the light most favorable to plaintiff, the non-moving party. *See Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009).

Plaintiff Patrick Marcelin ("Marcelin") was formerly employed as a firefighter with the Fire Rescue Department of the City of West Palm Beach (the "City"). During his employment, Marcelin enrolled in paramedic school to pursue a Florida paramedic certification, which required Marcelin to complete, *inter alia*, a certain number of hours riding along with licensed paramedics (referred to as "field ride hours"). Marcelin's field ride hours were recorded in time logs.

After Marcelin completed the requisite field ride hours, the paramedic school's owner

reviewed Marcelin's field ride time logs, noticed that they contained irregularities, and approached the city battalion fire chief with suspicions that Marcelin falsified the logs. The city battalion fire chief and other city officials reviewed the logs and confirmed the apparent irregularities. Suspecting that the falsified field logs constituted a crime, the city officials contacted the police department and Florida state attorney's office. The police department opened a criminal investigation.

After the investigation began, on May 3, 2006, the fire department requested Marcelin to attend a conference during his work shift regarding the ride logs. In addition to Marcelin, the assistant fire chief, a human resources representative, and a union representative were present at the conference. During the conference, Marcelin provided an explanation for the apparent irregularities in the time logs, but the fire department deemed the explanation inadequate. Therefore, the assistant fire chief issued Marcelin a notice of investigation. The notice provided, in relevant part:

> You are considered a subject in an investigation presently pending before the Fire Rescue Administration. A Policy investigation has been ordered by the Fire Chief concerning the validity of your documentation of clinical ride time . . . I will be conducting the administrative portion of this complaint. Due to the allegation of a criminal act, there will be a companion criminal investigation . . . You are hereby ordered to fully cooperate with this investigation, to appear when so directed, to answer all questions fully and truthfully, and to present all information and/or evidence relevant to this inquiry when requested.

Next, on June 23, 2006, the station fire captain directed Marcelin to report to the police department to provide a statement. There, a detective interviewed Marcelin about his ride logs. The city battalion fire chief was present during the interview and, according to Marcelin, involved in the questioning. After waiving his Miranda rights, Marcelin made a sworn statement admitting that he forged signatures and dates on the ride logs. Marcelin alleges, however, that he made the statement involuntarily, for he feared that his refusal to cooperate would cause him to lose his job. On the

same day, the department placed Marcelin on paid administrative leave pending the conclusion of the administrative investigation.

On June 30, 2006, the state attorney's office charged Marcelin with uttering a forged instrument. Marcelin later pled guilty to fraudulent claims to secure paramedic license, a lesser offense.

On July 31, 2006, the fire department sent Marcelin notice of an administrative proceeding, to be held on August 14, 2006. The noticed provided, in relevant part: "You are being called to respond to the validity of your Paramedic Clinical Ride Time Logs for the period December 1, 2005 to April 5, 2006." The notice also informed Marcelin that he could be represented by counsel during the proceeding.

Marcelin attended the administrative proceeding on August 14, 2006, and was represented by counsel. At the beginning of the proceeding, the assistant fire chief read the administrative investigation sworn subject employee statement, which provided, in relevant part:

> You will be asked questions . . . related to the performance of your official duties or continued fitness for office. You are hereby ordered to answer all questions honestly, completely and to best of your ability . . . Your are required to give a statement for administrative purposes. Refusal to answer questions will result in your termination.

Marcelin was also afforded *Garrity* rights.[1] Specifically, he was told that "if the scope of this inquiry involves criminal activity, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings except perjury or obstruction of justice."

---

[1] *Garrity* rights provide public employee with immunity from criminal prosecution for statements made for the purpose of internal investigations. *See Garrity v. New Jersey*, 385 U.S. 493 (1967).

Marcelin refused to answer any questions at the August 14, 2006 administrative hearing.

The next day, the department placed Marcelin on unpaid administrative leave. The department scheduled another administrative proceeding for August 18, 2006. Marcelin was personally served with a notice on August 15, 2006. The notice stated that Marcelin was "being called to respond to the following allegation[]: On August 14, 2006, you failed to cooperate and answer questions during an administrative proceeding." Marcelin attended the hearing and, like at the previous hearing, he refused to answer questions.

Another set of administrative hearings were scheduled for November 20, 2006 and November 21, 2006. The City sent a letter, dated November 6, 2006, to Marcelin's counsel stating that on November 20, 2006 "a statement from Patrick Marcelin regarding respective disciplinary complaints will be conducted" and that on November 21, 2006 Marcelin "will be afforded an opportunity to present to Fire Chief Ridgeway any matter regarding proposed discipline for alleged violation of work rules relating to falsification of documents." Marcelin's complete administrative file was included with the letter. On November 15, 2006, Marcelin's counsel sent a return letter confirming receipt of the letter. The return letter complained that Marcelin's counsel never received proper notice of formal charges, as required by city policy and state statute, and therefore advised that neither he nor Marcelin would attend the scheduled hearings.

On November 16, 2006, Marcelin was personally served with notice of the administrative hearing. Marcelin attended neither the November 20, 2006 hearing nor the November 21, 2006 hearing.

On December 7, 2006, the City terminated Marcelin's employment. The City stated the following grounds for termination: 1) violation of civil service rules and regulation XII, 2) violation

of any lawful and reasonable regulation or order, or failure to obey any lawful or reasonable direction given by a supervisor, 3) insubordination; and 4) falsification of documents prepared to secure employment or during the course of employment with the city.

The complaint alleges that the City ordered Marcelin to attend the administrative hearings on November 20, 2006 and November 21, 2006 without providing notice of the charges; coerced Marcelin to respond to inquires while the criminal investigation was pending, without providing *Garrity* rights; and fired Marcelin for invoking his privilege against self incrimination.

## JURISDICTION

This court possesses federal question jurisdiction under 28 U.S.C. § 1331, because this case involves a claim under a federal civil rights statute.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A.  *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a

matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B. *Defendant's Motion for Summary Judgment*

#### 1. *Privilege against Self Incrimination*

Marcelin's complaint alleges that the City violated his privilege against self incrimination by questioning him without "inform[ing] [him] that his responses would not be used in a subsequent criminal proceeding" and by firing him for his failure to waive his Fifth Amendment rights.[2]

##### a. *Standard*

---

[2] During oral argument, counsel for Marcelin made clear that Marcelin's suit is based on the City's alleged violations of Marcelin's Fifth Amendment rights at the administrative hearings, not at the initial conference or during the interview at the police station.

The Fifth Amendment to the United States Constitution, which has been incorporated to the states under the Fourteenth Amendment, provides in pertinent part that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." The Amendment affords individuals two important rights: It protects the "individual against being involuntarily called as a witness against himself in a criminal prosecution" and privileges "him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answer might incriminate him in future criminal proceedings." *Leftkowitz v. Turly,* 414 U.S. 70, 77 (1973). A person protected by the privilege may refuse to answer questions unless he is first granted immunity. *Id.*

In *Garrity v. New Jersey*, the Court assessed whether a state government could use the threat of discharge to obtain inculpatory statements from its employees. 385 U.S. 493, 497 (1967). There, police officers subject to internal investigation were asked self-incriminating questions, and were told that the refusal to answer the questions would result in their discharge. The Court held that if a public employee has to chose between either self-incrimination or termination of employment, the employee's privilege against self-incrimination has been violated, for a decision of that kind is "likely to exert such pressure upon an individual as to disable him from making free and rational choice." 385 U.S. 493, 497 (1967). "The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.*

Later cases made clear that *Garrity* only prohibits the use of compelled testimony that has not been immunized – that is, states cannot discharge employees for refusing to waive their Fifth Amendment rights. *Harrison v. Wille*, 132, F.3d 679, 682 (11th Cir. 1998). A state may, however, lawfully discharge a public employee who refuses to answer questions "specifically, directly, and

7

narrowly tailored relating to the performance of [the employee's] official duties, without being required to waive [his] immunity." *Gardner v. Broderick*, 392 U.S. 273, 278 (1968). "An employee's rights are imperilled only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers." *Harrison*, 132 F.3d 682 (internal quotations omitted).

### b.     Garrity Rights

Here, the undisputed record evidence shows the City expressly afforded Marcelin *Garrity* rights at the first administrative hearing, where Marcelin was asked questions under the threat of discharge. At the beginning of the hearing, the following language was read to Marcelin: "[I]f the scope of this inquiry involves criminal activity, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings except perjury or obstruction of justice." Despite this grant of immunity, Marcelin refused to answer the City's questions. Therefore, the record evidence belies Marcelin's allegation the City questioned him without informing him that his statements could be used in criminal proceedings.

Since the City did not compel Marcelin to testify *and* waive his Fifth Amendment rights, it did not violate Marcelin's Fifth Amendment rights at the administrative hearings. *See Harrison v. Wille*, 132, F.3d 679, 682 (11th Cir. 1998). The court will therefore grant summary judgment in favor of the City on Marcelin's claim that the City compelled him to answer questions in violation of the Fifth Amendment.

### c.     Discharge of Marcelin

The City argues that it did not fire Marcelin for exercising his Fifth Amendment right to

silence. To prevail on his claim that he was fired for invoking his Fifth Amendment rights, Marcelin must introduce "sufficient facts upon which a reasonable jury could conclude that he was terminated *solely* because he remained silent at the predisciplinary conferences." *Id.* So long as the City considered evidence besides Marcelin's silence, the City was permitted to draw an adverse inference from Marcelin's invocation of his Fifth Amendment right to silence. *See id.*

Here, Marcelin has not come close to meeting his burden. The City terminated Marcelin after conducting a full investigation that revealed falsified time logs. Marcelin has introduced no evidence showing that the City's decision to discharge Marcelin was not based at least in part on this evidence. Therefore, the court will grant summary judgment in favor of the City on Marcelin's claim that he was terminated for exercising his Fifth Amendment rights.

### 2. *Procedural Due Process*

Marcelin's complaint alleges that the City failed to provide proper notice of the administrative hearings, in violation of his right to procedural due process. The City contends that it afforded Marcelin sufficient procedural due process before terminating his employment. The court agrees with the City.

Public employees who can be discharged only for cause have a constitutionally protected property interest in their employment, which cannot be terminated without due process. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). Due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citations omitted).

Here, the undisputed evidence shows that Marcelin had numerous opportunities to be heard.

In total, the City scheduled four administrative hearings, of which Marcelin attended only two. Marcelin had opportunities to respond to questions, present evidence, and to tell his side of the story, but he refused. His choice to exercise his Fifth Amendment rights at the two hearings he attended "does not negate the fact that the opportunity [to be heard] existed." *Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998). "Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer." *Harrison*, 132 F.3d at 684 (citing *Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir.1990)). Marcelin was afforded such opportunities.

The record evidence also shows that Marcelin and his attorney were given proper notice of the four scheduled administrative hearings. The City notified Marcelin in writing prior to each hearing, and the notice informed Marcelin that he was being charged with violating work rules and falsifying ride logs. The City also made available Marcelin's administrative file and communicated with Mareclin's attorney about the hearings. Notice is "sufficient if it notifie[s] [p]laintiff of the charges and [is] timely, whether oral or written." *Harrison,* 132 F.3d at 684; *see Loudermill*, 470 U.S. at 546 The notice provided by the City both notified Marcelin of the charges and was timely.[3] As a result, the court will grant summary judgment in favor of the City on the issue of procedural due process.

---

[3] Counsel that represented Marcelin during the administrative hearings wrote the city complaining that he never received proper notice of formal charges, as required by city policy and state statute. To the extent that city policy and state statute required more process than Marcelin was afforded, the court notes that the Due Process Clause of the Federal Constitution, as interpreted by the Supreme Court, governs the analysis here, not state law or city policy. *See Bailey v. Bd. of County Commissioners of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.1992).

Order Granting Summary Judgment
Marcelin v. City of West Palm Beach
Case No. 08-80725-HURLEY/HOPKINS

## CONCLUSION

For the foregoing reasons, the court finds that no genuine issue of material fact exists regarding Marcelin's claims. The City's motion for summary judgment will therefore be granted, and judgment entered in favor of the City.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's motion for summary judgment [DE # 24] is **GRANTED**.

2. Pursuant to Fed. R. Civ. P. 58, the court will enter final summary judgment in favor of defendant by separate order.

3. Defendant's motions to strike [DE # 43, 66] are **DENIED as MOOT**.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 27th day of October, 2009.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*